Totten, J.,
delivered the opinion of the court.
This is an action on the case, founded on the act of 1850, ch. 58, which gives to the representatives of a *265 person wbo bas come to Ms death by injuries received from another, an action for damages where the injuries are such, “in case death had not resulted, an action of damages would lie at law” — the recovery to be for the use of the widow and children, free from the claims of creditors.
The defendant is an incorporated turnpike company, and its McAdam road extends from Nashville to Erank-lin, on which it receives tolls at its several gates, according to the rates permitted by its charter.
The declaration avers, that the defendant negligently permitted said road to be and remain obstructed by the erection of a cedar post in the road, six inches in diameter, and twenty feet high, firmly set in the earth-; that said post was a nuisance in the road, rendering it dangerous to persons passing and using the road. It then avers, that on the Yth December, 1851, while the plaintiff’s intestate was passing on said road in his carryall, his horse became suddenly frightened, and said intestate was thrown violently against said post, receiving such injury thereby, that he died of the same soon afterwards.
The defendant was incorporated in 1828, and its charter provides, that “the said road shall be opened at least thirty feet wide, with sufficient ditehes on each side, at all times to carry off the water and drain the same; shall gradually descend from the middle to the side ditches; shall be substantially gravelled or paved,” &e. The commissioners were to “decide upon the depth and width of the rock pavements on said road, and different parts thereof.” Charter, 1828, § 11.
By the act of 1832, ch. 100, to amend the charter, *266 the road was to be covered, “with a sufficient depth of rock, according to the McAdam plan, to admit of travel thereon.” The road being constructed and completed according to its charter, as it is insisted, the defendant for many years has been, and is in the use and enjoyment of its franchise as granted in the charter.
By the act 1847, ch. 10, a magnetic telegraph company, was incorporated, with “power to set- up their fixtures along and across any of the roads, streets or waters of this State, without it being deemed a public nuisance; or subject to be abated by any private person; the said fixtures to be so placed as not to interfere with the common use of such roads, streets and waters.” And, then, there is a provision for indemnity, for injury to private property. By a general law, these rights are conceded to the owners of any system of telegraphing used in this State. 1848, ch. 83. §10.
In virtue of these powers, a line, of telegraph posts was erected along said road, on which the wire is suspended, for use in the transmission of dispatches.
The road, where the post in question is situated, about three miles from Nashville, was surveyed at the request of the parties, by witness Hagan, who returned a plat and description of the same.-
The post is 15 feet 10 inches, west from the centre of the turnpike road, computing the distance to the centre of the post, which is 8 inches in diameter: is 15 to 20 feet high,, firmly set in the earth, at the inner edge of the ditch. It was two feet from the usual wheel-tracks on that side of the road, and the metal or rock on the road had spread out to the base of the post.
*267 The road at that place „ was 30 feet wide, clear of all obstruction, and wide enough for all vehicles to pass without collision. There were fences on each side of the road, outside of the ditches, and said post was 10 feet 3 inches from the fence on that side. The post is at a level surface at the base of a long descent of the road.
John JPoynor was going from Nashville in his carryall, was a little excited by the use of spirits; his horse was not perfectly gentle; he passed a wagon, taking the left side; his horse was frightened and started suddenly to the right side of the road, and passing between said post and the fence, the inner wheel struck the post, the deceased' was thrown forward violently against the post, his head striking it, which caused a fracture of the skull, of which he died in a few days.
Such are the leading 'facts of the case.
A portion of the charge of his Honor the judge, is as follows:
“You will enquire whether the telegraph post constituted a nuisance, or was unlawfully planted where it stood?” After stating that defendant was not bound to make the road wider than 30 feet, he says, but if made wider the defendant is bound to keep it free from obstruction to the extent it has been made. The ditches do not constitute a part of the road designed to be traveled on, but they are appurtenant to the road, and the fact that a post is planted in and by the ditches, does not make it lawful, provided it constitute an obstruction to the common use of the road.”
“If you should think, that the post constituted an obstruction to the road, as built and used, and that the *268 deceased, was tilled by it, without fault on bis part, then the defendant will be liable, although the post may have stood in the ditch, and although it was inore than fifteen feet from the center of the road.”
The verdict and judgment were for the plaintiff for three thousand dollars, and the defendant appealed in error.
The question is, was the telegraph post a nuisance, for the erection and continuance of which, the defendant, the Turnpike Company, is responsible?
It was erected by the Telegraph Company, assuming to act under the authority of law. The company had power “ to set, up its fixtures along and across the road, without it being deemed a public nuisance, or subject to be abated by any private person; the fixtures to be so placed as not to interfere with the common use of the road.”
If any injury were done to the defendant, by the erection and establishment of the telegraph line along its road, it was entitled to indemnity, as in the case of any private person, to whose property a similar injury was done. The franchise of the telegraph company, and that of the turnpike company, were both granted upon the same, considerations of public use, convenience and utility. Nor was it intended, that the one should supersede the other, that the former should supersede the latter, as both may continue and subsist together, and be promotive of the public convenience and interest.
To avoid a conflict of the rights and duties which appertain to the respective franchises, the telegraph company is forbid in erecting its fixtures, “to interfere with the common use of the road.”
*269 If, therefore, its fixtures interfere with the common use of the road, the same being unauthorized by its charter, are illegal, and may be abated, in like manner as if erected by any other unauthorized person. And it is the duty of the turnpike company, to cause the nuisance to be abated; a duty which it must perform at the peril of its responsibility to the public, and to persons who incur special injury on account of the nuisance.
But this right to abate the fixtures of the telegraph company, is limited to the case where they interfere with the common use of the road. Where this is not the case, and yet such fixtures, necessary to the proper use and enjoyment of the franchise, occasion a private injury to the property of the turnpike company — an injury to its road, then the former must make indemnity to the latter for the injury; and the fixtures are not liable to be abated. The rights of the defendant, under its acts of incorporation, stand on the same ground, in this respect, as the rights of a natural person. Each is alike entitled to indemnity, for the necessary injury done to private property, in erecting and establishing the telegraph line, for the public use and convenience.
The case then comes to this: did the erection of the telegraph post, interfere with the common use of the road ?
In this view, it is material to consider what were the duties of the defendant, in regard to the construction of its road, and the order and repair in which it shall be kept.
And it is clear, that it was the duty of the defendant to construct the road on the plan and model folly and distinctly stated in the charter; and to keep the *270 same in perfect repair. If this be done, tbe defendant has performed the conditions of its charter, and being in no fault, cannot be liable for accidents that occur in the use of the road. Otherwise, the defendant has incurred obligations so vague, indefinite and oppressive, as must repel any one from undertaking a similar enterprise.
Now, the charter before us, requires that the “road shall be opened at least 80 feet wide,” and be free, - of course, of any defect or obstructions; and so, if it be made wider at the option of. defendant, it must be constructed on the plan prescribed, and be free of defect and obstruction.
For this is the road-bed, designed for the use of travel, and whether it be 80 feet wide, or more, it must be in safe and proper condition for the public use.
In this respect, the charge of the judge was correct.
Next, as to the ditches, they are “drains” for the road, and must be “sufficient” for the purpose intended. It is understood, of course, that at many places they are useless, and need not, perhaps, could not be constructed.
The judge left it to the jury to say, “whether the telegraph post was a nuisance, or was unlawfully planted where it stood.” But no principle is stated, and the law and fact are left to the jury.
He further instructed the jury: “if you think the post constituted -an obstruction to the road as built and used, and that the deceased was killed by it, without fault on his part, then, ■ the defendant will be liable, although the post may have stood in the ditch, and although it was more than fifteen feet from the centre of the road.”
*271 Here again, tbe whole case is left to tbe jury, without defining tbe nature and extent of tbe defendant’s obligations.
If tbe road were of proper width and grade, and perfect in construction, according to tbe model given in tbe charter, then it must be conceded, that tbe defendant has performed its obligations to the public: and, if tbe post be planted at a safe and convenient distance beyond tbe margin of tbe road, as made and used, though at tbe inner edge of tbe ditch, which is intended for a drain, it is not prima facie, a nuisance. A. post, or tree, at tbe inner edge of tbe ditch, is not per se a nuisance.
If this doctrine be not true, then, tbe defendant is bound to constructive obligations, not in tbe charter, and which would probably render tbe continuance of its franchise, a greater loss than profit.
But tbe plan of the road being given, it must of course, be well constructed, be free from defects, be safe and convenient for travellers, their teams, carriages and other vehicles.
And therefore, in case of defect in its construction, and repair, a post, tree', pit or other. obstruction, within the line of the ditches, and .even out of it, may prove to be a nuisance, where, " by reason of such defect, the safety of travel is endangered. As for instance, if a decayed tree be near, or overhang the road, or a pit be opened near its margin, .or a precipice or bridge remain without guards, or the lite. So, if the line of the turnpike be not well defined by visible objects, an obstruction not in its limits, but in the ’ general line and course of travel, may prove" to be a nuisance, and ren *272 der the owners liable; as in Coggswell vs. Inhabitants of Lexington, 4 Cushing’s Rep., 309.
The counsel for the plaintiff refers to Snow vs Inhabitants of Adams, 1 Cushing’s Rep., 444, and Cassaday vs. Stockbridge, 21 Vermont R., 391.
In the first case, the obstruction being logs, boards and planks, piled up, was within the limits of the road, and so near the travelled path, as to render the highway defective and unsafe for travel. In the other case, 21, Vermont, the obstruction was a “sled-crook,” which lay where the “road was worleed and level,” and on the opposite side, at the distance of fourteen feet, was another obstruction in the road, near the travelled path; and it was left to the jury to say, whether the road was sufficient or not?
Well, these cases prove, that an obstruction within the limits of the road, and so near the line of the tra-velled path, as to endanger travel, is a nuisance. And so, we have said, in the present case, that if the post be planted at a safe and convenient distance beyond the margin of the road, as made and used, though at the inner edge of the ditch, it is not prima faeie a nuisance, and the converse, of course, is true. For the same reason, it must also be true, that a post, tree or the like, planted on the inside of the ditch, but off the travelled path, is not per se, a nuisance.
Now, in order to a just and proper trial, the nature and extent of the defendant’s duty, in respect to the construction and repair of the road, and the law of nuisance, as it applies to the case, should be fully stated by the judge to the jury, and by them be applied to the facts, in coming to their verdict.
*273 We consider, as will be seen, that the charge was imperfect, and in some respects, erroneous; for which the judgment will be reversed, and the cause remanded for a new trial.
Judgment reversed.